UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOHN DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-cv-00970-O |
| | § | |
| INGA DOW, KELLER WILLIAMS | § | |
| REALTY, INC., GARY KELLER, and | § | |
| JOSH TEAM | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT INGA DOW'S BRIEF IN SUPPORT OF**
**MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**

| | |
|---|---|
| MICHAEL Y. KIM | 24039960 |
| ERICHA RAMSEY BROWN | 24051952 |
| EDUARDO R. GARZA | 24120843 |

**THE MICHAEL KIM LAW FIRM, PLLC**
4236 W. Lovers Lane
Dallas, Texas 75209
(214) 357-7533
(214) 357-7531 Facsimile
mkim@mkimlegal.com
erbrown@mkimlegal.com
egarza@mkimlegal.com

ATTORNEYS FOR DEFENDANT

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

    I.    INTRODUCTION ................................................................................................ 1

    II.    SUMMARY OF ALLEGATIONS ...................................................................... 2

    III.    ARGUMENTS AND AUTHORITIES ............................................................... 5

        A.  Fed. R. Civ. P. 12(b)(6) Standard .............................................................. 5

        B.  Plaintiff's abuse of process claim should be dismissed because Plaintiff failed to plead any facts demonstrating Defendant made an improper use of process ................................................................................. 6

        C.  Plaintiff's claim for tortious interference with prospective business relations should be dismissed because Plaintiff wholly fails to allege any facts to support multiple elements of such a claim under Texas law ................................................ 8

            *i.*  *Plaintiff failed to allege facts showing there was a reasonable probability that he would have entered into a business relationship with a third party* ........................................................ 9

            *ii.*  *Plaintiff has failed to allege facts showing that Defendant intentionally interfered with any prospective business relationship* .............................. 10

            *iii.*  *Plaintiff has failed to plead that the alleged acts of interference by Defendant were independently tortious* ...................................................... 13

            *iv.*  *Plaintiff has failed to allege facts showing that his alleged injuries were proximately caused by an act or omission of Defendant* ........................... 13

    IV.    CONCLUSION .................................................................................................. 14

PRAYER ..................................................................................................................................... 15

CERTIFICATE OF SERVICE ................................................................................................. 16

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................................5, 6

*Beavers v. Metro. Life Ins. Co.*,
  566 F.3d 436 (5th Cir. 2009) ......................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................................6

*Bradford v. Vento*,
  48 S.W.3d 749 (Tex. 2001) ..................................................................................................10, 11

*Cantu v. Guerra & Moore, Ltd. LLP*,
  328 S.W.3d 1 (Tex.App.—San Antonio 2009, no pet.) ..............................................................9

*Coinmach Corp. v. Aspenwood Apt. Corp.*,
  417 S.W.3d 909 (Tex. 2013) .......................................................................................................8

*Cooper v. Trent*,
  551 S.W.3d 325 (Tex.App.—Houston [14th Dist.] 2018, pet. denied) ......................................6

*Detenbeck v. Koester*,
  886 S.W.2d 477 (Tex.App.—Houston [1st Dist.] 1994, no writ) ..............................................7

*Landry's, Inc. v. Animal Legal Def. Fund*,
  631 S.W.3d 40 (Tex. 2021) .......................................................................................................13

*Martin v. Trevino*,
  578 S.W.2d 763 (Tex.App.—Corpus Christi 1978, writ ref'd n.r.e.) .........................................6

*Martinez v. English*,
  267 S.W.3d 521 (Tex.App.—Austin 2008, pet. denied) ............................................................7

*Preston Gate, LP v. Bukaty*,
  248 S.W.3d 892 (Tex.App.—Dallas 2008, no pet.) ................................................................6, 7

*Richardson–Eagle, Inc. v. William M. Mercer, Inc.*,
  213 S.W.3d 469 (Tex.App.—Houston [1st Dist.] 2006, pet. denied) ........................................9

*Texas Oil Co. v. Tenneco Inc.*,
  917 S.W.2d 826 (Tex.App.—Houston [14th Dist.] 1994), *rev'd on other grounds sub nom.
  Morgan Stanley & Co. v. Texas Oil Co.*, 958 S.W.2d 178 (Tex. 1997) ...................................11

*Warner Bros. Entm't, Inc. v. Jones*,
    538 S.W.3d 781 (Tex.App.—Austin 2017) *aff'd*, 611 S.W.3d 1 (Tex. 2020)..............................6

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOHN DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-cv-00970-O |
| | § | |
| INGA DOW, KELLER WILLIAMS REALTY, INC., GARY KELLER, and JOSH TEAM | § § § | |
| | § | |
| Defendants. | § | |

**DEFENDANT INGA DOW'S BRIEF IN SUPPORT OF**
**MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**

TO THE HONORABLE UNTIED STATES DISTRICT JUDGE:

COMES NOW Inga Dow, Defendant in the above-styled and numbered cause ("Defendant"), and files this, her Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6), and Brief in Support (respectively, the "Motion" and the "Brief"), and in support thereof would respectfully show the Court the following:[1]

**I.**
**INTRODUCTION**

1.  On or about October 27, 2022, John Davis, Plaintiff in the above-styled and numbered cause ("Plaintiff"), filed his Original Complaint [Doc. #1] in which he asserts causes of action against Defendant for abuse of process and tortious interference with prospective relations (the "Complaint").

---

[1] In conjunction with the filing of the Motion and the Brief, Defendant also filed a Motion to Consolidate and Stay. To the extent necessary and applicable, the filing of this Motion and Brief do not waive any rights or relief requests by and through Defendant's Motion to Consolidate and Stay. Moreover, Defendant requests ruling on her Motion to Consolidate and Stay prior to ruling on this Motion in the interest of judicial economy.

1

2. With regard to his abuse of process claim, Plaintiff alleges that Defendant filed a frivolous and/or malicious lawsuit for the purpose of coercing a favorable sale of her businesses. While Plaintiff's allegations have no basis in truth, the mere filing of a frivolous or malicious lawsuit is not an improper use of process under Texas law.

3. As to Plaintiff's tortious interference claim, Plaintiff alleges that Defendant tortiously interfered with the sale of his remaining interests with Keller Williams Realty, Inc. ("KWRI ") when she made allegations of sexual assault concerning Plaintiff to KWRI. However, the facts alleged in the Complaint, when considered in their entirety, demonstrate that (a) the formation of a contract was not reasonably probable; (b) Defendant did not intentionally interfere with the formation of any alleged contracts or relationships; and (c) Defendant did not proximately cause Plaintiff's alleged injuries.

4. Accordingly, by and through the Motion and the Brief, Defendant seeks an Order dismissing Plaintiff's causes of action asserted against her in their entirety because Plaintiff has failed to state a claim against Defendant upon which relief can be granted.

## II.
## SUMMARY OF ALLEGATIONS

5. In the Complaint, Plaintiff offers a litany of disjointed and conflicting allegations against Defendant, and others, which paint a picture of an innocent man whose reputation has been maliciously tarnished by colleagues envious of his accomplishments and the admiration he received. *See generally* the Complaint.

6. Plaintiff first alleges that approximately two years after beginning his career at KWRI, he and Defendant engaged in a "consensual, and non-exclusive" romantic relationship which lasted approximately six years from 1998 to 2004. *See* the Complaint, ¶ 15. Plaintiff also alleges that in 1998, Defendant reported to his aunt, Mary Tennant, that Plaintiff had engaged in

"inappropriate" and/or "uninvited" sexual behavior with Defendant, but these claims were falsely made at the behest of Defendant's "abusive boyfriend" who was jealous of Plaintiff. *See* the Complaint, ¶¶ 41–42.

7. According to Plaintiff, he and Defendant "mutually and amicably agreed" to end the alleged relationship in or around 2004; they had "minimal," "limited," and/or "sporadic" contact after 2004; and they had no contact at all since 2018. *See* the Complaint, ¶¶ 15, 45, 55.

8. Next, Plaintiff alleges that his career at KWRI subsequently "took off," and he was named Vice-President of KWRI in 2011, then President of KWRI in January 2015, and ultimately CEO of KWRI in April 2017. *See* the Complaint, ¶ 32. However, Gary Keller, the founder of KWRI, soon became jealous of the attention Davis received and began promoting new business strategies for market center caps and general innovation in late 2017. *See* the Complaint, ¶¶ 17, 53.

9. Plaintiff alleges he was vehemently opposed to Keller's suggested strategies and tried everything in his power to stop Keller from incorporating these new strategies, including lobbying against Keller's strategies, denying Keller's request that Josh Teams be appointed as President of KWRI (which caused Teams to develop a dislike for Plaintiff), and ultimately resigning from his position as CEO of KWRI in January 2019. *See* the Complaint, ¶¶ 17, 50–53.

10. Plaintiff's narrative continues by alleging that Keller did not take his resignation lightly, interjected himself and Teams into the subsequent sale of Plaintiff's remaining interests in KWRI, and sought to make Plaintiff's separation from KWRI both as painful as possible for Davis and as beneficial as possible for himself. *See* the Complaint, ¶ 52. According to Plaintiff, Keller and Team have continually engaged in a smear campaign against Davis, made extensive efforts to

dig up dirt on Plaintiff, demoted or terminated any one at KWRI who held Plaintiff in a positive light, and promoted those who spoke ill of Plaintiff. *See* the Complaint, ¶ 54.

11. In this same regard, Plaintiff also alleges that after his resignation as CEO in January 2019, he further sought a "full" and/or "complete" separation from KWRI through the sale of his ownership interests in certain KWRI regional offices and/or market centers. *See* the Complaint, ¶¶ 21–25, 51, 66. "Prior to the allegations by Dow," KWRI, Keller, and Team deliberately delayed Plaintiff's separation to continue profiting from Plaintiff's regions and/or market centers while simultaneously preventing him from obtaining employment with a competitor. *See* the Complaint, ¶ 25. According to Plaintiff, the separation agreement and sale of his interests in KWRI should never have taken more than six months, but KWRI, Keller, and Teams deliberately stalled for nearly two years. *See id*. As part of the contemplated separation, Plaintiff alleges that in 2020, more than one year after his resignation as CEO, he negotiated a sale of his interests to Smokey Garrett for a sale price of $46 million, which KWRI rejected. *See* the Complaint, ¶¶ 22, 70.

12. Without specification, Plaintiff alleges that in the summer of 2020 Defendant made allegations to KWRI that she had suffered years of sexual assault at Plaintiff's hands. *See* the Complaint, ¶ 57. He later insinuates that KWRI, Keller, and Team learned of the allegations also at some unspecified time frame in the summer of 2020. *Id.* At ¶ 25. Plaintiff also alleges that these allegations are false and were only made to KWRI as:

> a fear tactic to coerce [KWRI] to purchase [Defendant's] market centers for more than they are worth. [Defendant], and her attorneys, believed the false allegations against [Plaintiff] and several other [KWRI] operators would cause Keller to succumb to the pressure for fear of bad publicity against his company and would lead to a more favorable sale for [Defendant], especially because at the time it was believed that Keller was taking [KWRI] public.

*See id*. At ¶ 19.

4

13. Plaintiff next alleges that Keller and Team rejected the proposed sale to Smokey Garret because of Defendant's allegations, concealed said allegations from him, and ultimately forced Plaintiff to sell his KWRI interests to Keller for significantly less than their actual value. *See* the Complaint, ¶ 22. Plaintiff also alleges that he did not become aware of Defendant's allegations until November 2021, approximately one year after completing his separation and sale of his KWRI interests to Keller. *See* the Complaint, ¶ 57.

14. Curiously, Plaintiff does not offer any specific reasons why he was "forced" to accept a lower price for his KWRI interests. He alleges only that KWRI, Keller, and/or Teams intentionally "sped up" his separation from KWRI when they learned of Defendant's allegations and felt assured that Plaintiff would no longer be a threat to KWRI once they became public. *See* the Complaint, ¶ 25. Plaintiff also provides no reason or facts demonstrating what occurred related to his separation from, and any related separation agreement with, KWRI in the timeframe from the time of his resignation in or around January 2019 until the vague allegations regarding the sale of his businesses during unspecified time periods in 2020. *See generally* the Complaint.

15. As a result of these alleged acts and/or omissions by Defendant, KWRI, Keller, and/or Teams, Plaintiff claims his reputation has been ruined and the market value of his KWRI interests was significantly depressed. *See* the Complaint, ¶¶ 69–70.

### III.
### ARGUMENTS & AUTHORITIES

A. **FED. R. CIV. P. 12(b)(6) Standard**

16. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations that, when assumed to be true, state a claim for relief that "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard

"asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. When a complaint pleads facts that are "merely consistent with" a defendant's liability, "it 'stops short of the line between possibility and plausibility.'" *Id*. (citation omitted). Although a court must accept well-pleaded facts as true, neither conclusory allegations nor "legal conclusions masquerading as factual conclusions" are entitled to a presumption of truth. *Beavers v. Metro. Life Ins. Co*., 566 F.3d 436, 439 (5th Cir. 2009); *see also Iqbal*, 556 U.S. at 678–79, 681. A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must provide "factual content" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**B.      Plaintiff's abuse of process claim should be dismissed because Plaintiff failed to plead any facts demonstrating Defendant made an improper use of process.**

17.     Under Texas law, the elements of a cause of action for abuse of process are the following: (1) the plaintiff was served with valid process; (2) the defendant made an illegal, improper, or perverted use of the process after it was issued; (3) the defendant had an ulterior motive or purpose in using the process; and (4) the plaintiff suffered injury as a result of the improper use. *Cooper v. Trent*, 551 S.W.3d 325, 333–34 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 815 (Tex. App.—Austin 2017) *aff'd*, 611 S.W.3d 1 (Tex. 2020); *Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App.—Dallas 2008, no pet.).

18.     Process is any writ, summons, mandate, or other judicial procedure used to inform a defendant of the beginning of judicial proceedings against it and to compel its appearance in court. *Martin v. Trevino*, 578 S.W.2d 763, 769 (Tex. App.—Corpus Christi 1978, writ ref'd n.r.e.). To prove an action for abuse of process, the plaintiff must establish the defendant made some

6

illegal, improper, or perverted use of the process after it was issued. *Martinez v. English*, 267 S.W.3d 521, 528 (Tex. App.—Austin 2008, pet. denied) (emphasis added); *Bukaty*, 248 S.W.3d at 897.

19. In the case at bar, Plaintiff asserts a claim against Defendant for abuse of process based on his allegation that Defendant "made an illegal, improper, and perverted use of the litigation process by filing an administrative action (EEOC) and the Federal Lawsuit under false pretenses for the purpose of coercing a favorable sale of her businesses." *See* the Complaint, ¶ 75.

20. While such facts are disputed, even if taken as true, Texas courts have held the mere filing of a lawsuit with malicious intent is not an improper use of process. *See Detenbeck v. Koester*, 886 S.W.2d 477, 480–81 (Tex. App.—Houston [1st Dist.] 1994, no writ). The deciding factor is whether the process is used for a purpose intended by law, regardless of the merits of the lawsuit in which it is used. *See id.* at 481. The *Detenbeck* court held the plaintiff could not maintain a cause of action for abuse of process, and explained that:

> Even if we were to assume that [Defendants] instituted the malpractice suit without probable cause, and with the malicious intent of coercing a settlement, [Plaintiff's] pleadings remain defective because they do not allege an improper use of the process. The only process involved in this case was the citation issued when the cause was filed. The citation was used only for its intended purpose of compelling an answer to the lawsuit. The mere maintenance of a civil action, even if done with malicious intent, will not support a cause of action for abuse of process.

*Id.* at 480-81.

21. Here, Plaintiff has not alleged any sort of illegal, improper, or perverted use of a writ, summons, mandate, or other judicial process or procedure used to inform Plaintiff of the beginning of judicial proceedings against him and/or to compel his appearance in court. *See generally* the Complaint. Similar to the facts in *Detenbeck*, the only process involved in the Federal Lawsuit appears to be the citation issued when said lawsuit was filed, and Plaintiff does

not allege that the citation was used for any purpose other than its intended purpose of compelling him to answer the lawsuit. *See* the Complaint, ¶ 57. Thus, even if Plaintiff's allegations are taken as true, they do not demonstrate that Plaintiff has a plausible right to relief.

22. Moreover, even if Plaintiff would have properly pled allegations that track his cause of action, which he has not, Plaintiff's factual allegations, nonetheless, constitute nothing but factual and/or legal conclusions. *See* the Complaint, ¶¶ 74-83. Plaintiff's statements are entirely conclusory, and no specific facts have been alleged affirmatively demonstrating that Defendant in fact attempted to use the process in the manner alleged by Plaintiff.[2]

23. As Plaintiff failed to allege any facts which support any element of his claim for abuse of process, such cause of action fails as a matter of law, and Plaintiff's abuse of process claim should be dismissed, in its entirety.

**C.  Plaintiff's claim for tortious interference with prospective business relations should be dismissed because Plaintiff wholly fails to allege any facts to support multiple elements of such a claim under Texas law.**

24. The elements of a cause of action for tortious interference with prospective business relations are the following: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third person; (2) the defendant intentionally interfered with the relationship; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff's injury; and (5) the plaintiff suffered actual damage or loss. *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

---

[2] To illustrate, while Plaintiff contends Defendant's claims in the Federal Lawsuit were allegedly time barred, such allegations were before Judge Pittman for consideration, but were not ruled on prior to the Federal Lawsuit being stayed, and as such constitute factual and legal conclusions.

8

   *i.*  *Plaintiff failed to allege facts showing there was a reasonable probability that he would have entered into a business relationship with a third party.*

  25.  To assert a claim for tortious interference with business relations, a plaintiff must demonstrate that more than mere negotiations occurred. *Cantu v. Guerra & Moore, Ltd. LLP*, 328 S.W.3d 1, 7 (Tex. App.—San Antonio 2009, no pet.) (*citing Richardson–Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)). Though it is not necessary to prove the contract would have certainly been made but for the interference, that result must have been reasonably probable, considering all of the facts and circumstances attendant to the transaction. *Richardson–Eagle, Inc.*, 213 S.W.3d at 475–76.

  26.  In *Richardson-Eagle*, an insurance agency sued an insurance administrator for tortious interference with prospective relations seeking to recover commissions that would have been paid to it had the administrator's client (a school district) contracted with the agency's insurance companies to provide employee benefits packages. *See generally Richardson–Eagle, Inc.*, 213 S.W.3d at 472–73. The insurance agency alleged that it would have entered into a contract with the insurers to provide administrative services in exchange for commissions if the administrator had not advised the school district to seek more cost-effective proposals by negotiating directly with the insurers, and not the agency. *Id*. at 476. In holding against the plaintiff insurance agency, the court reasoned that a relationship between the plaintiff and the insurance companies was not reasonably probable given than such relationships could only form if there was first an agreement between the school district and the insurers, and the school district alone held the power to reject any proposals for employee benefits packages. *Id*.

  27.  Here, when considering all of Plaintiff's allegations as a whole, it cannot be said that a contract was reasonably probable. In this regard, Plaintiff alleges that he was "negotiating

a contract for the sale of his highly profitable regions" to Smokey Garrett for approximately $46 million. *See* the Complaint, ¶¶ 22, 86.

28.  However, Plaintiff also alleges that (a) Keller rejected this alleged contract, and (b) prior to Defendant's allegations, his personal and working with relationship with Keller and/or Teams had deteriorated, Plaintiff resigned in part to erode internal support for Keller's preferred business strategies, Keller and/or Teams intentionally delayed Plaintiff's separation from KWRI for nearly two years, and Keller and/or Teams sought to make Plaintiff's separation from KWRI both as painful as possible for Davis and as beneficial as possible for himself. *See* the Complaint, ¶¶ 25, 50–52, 86.

29.  These allegations are analogous to the facts in *Richardson-Eagle* and therefore amount to nothing more than mere negotiations because Keller held the power to reject the alleged contract between Plaintiff and Smokey Garret, and he had sufficient reasons and/or motivation to exercise this power independent of Defendant's alleged conduct.

30.  Even if Plaintiff's allegations are taken as true, they do not demonstrate that he has a plausible right to relief, as Plaintiff failed to allege facts showing there was a reasonable probability that he would have entered into a business relationship with either Smokey Garrett, KWRI, Keller, and/or Teams.  Therefore, Plaintiff's claim against Defendant for tortious interference with prospective relations should be dismissed.

> *ii.  Plaintiff has failed to allege facts showing that Defendant intentionally interfered with any prospective business relationship.*

31.  To prove an action for tortious interference with prospective business relations, the plaintiff must establish the defendant intentionally interfered with the formation of the relationship. *See Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001). The defendant intentionally interferes if

10

it desires to bring about the interference or if it knows the interference is certain or substantially certain to occur as a result of its conduct. *Id*.

32. If the defendant did not have actual knowledge of the prospective contract or business relations, its interference cannot be intentional. *Texas Oil Co. v. Tenneco Inc.*, 917 S.W.2d 826, 834 (Tex. App.—Houston [14th Dist.] 1994), *rev'd on other grounds sub nom. Morgan Stanley & Co. v. Texas Oil Co.*, 958 S.W.2d 178 (Tex. 1997). Similarly, if the interference was merely an incidental result of conduct that the defendant was engaging in for another purpose, the interference may be considered unintentional. *Bradford*, 48 S.W.3d at 757.

33. In support of this element of his claim, Plaintiff merely offers the following conclusory statement:

> [u]pon information and belief, [Defendant] was aware that Davis was negotiating a contract for the sale of his highly profitable regions to another Keller Williams operator (Mr. Garrett) when she knowingly and intentionally made false, defamatory, and malicious allegations against Davis and the prospective purchaser (Mr. Garrett), specifically including in the Federal Lawsuit, that caused Keller Williams and Keller to reject the proposed sale.

*See* the Complaint, ¶ 86.

34. However, a conclusory statement of willingness and intent is insufficient to meet the pleading requirements without some state factual basis. *See Bell Atlantic Corp.*, 550 U.S. at 555.

35. Rather, when considering the Complaint in its entirety, the Court will find Plaintiff has not alleged that Defendant intended to interfere with the sale of Plaintiff's KWRI interests to Smokey Garrett. At best, Plaintiff offers allegations that Defendant sought to "destroy" Plaintiff's career because she was envious of his career accomplishments. *See* the Complaint, ¶ 59. However, such allegations are conclusory and not supported by the Complaint, which elsewhere alleges that

he and Defendant ended their alleged relationship amicably in 2004, and Defendant continued to express "admiration and appreciation" for Plaintiff. *See* the Complaint, ¶¶ 15, 21, 45.

36. Furthermore, Plaintiff repeatedly alleges that Defendant's market centers were failing due to her, Keller's, and/or KWRI's mismanagement, and that Defendant's allegations were made with the specific intention of coercing KWRI and/or Keller into purchasing her market centers under more favorable terms. *See* the Complaint, ¶¶ 11, 13, 18–19, 27–29, 46–48, 56, 58–59, 63–64, 67, 75–77, 79, 93, 104.

37. Plaintiff also alleges that he and Defendant had not communicated with each other since 2018, Plaintiff resigned from KWRI in 2019, executive separation agreements like the one Plaintiff sought with KWRI never take longer than six months to complete, and Defendant allegedly made her allegations to KWRI in the summer of 2020, which is approximately one year after the time one should expect a departing CEO's separation to be finalized. *See* the Complaint, ¶¶ 19, 25, 55.

38. Thus, even if Plaintiff's allegations are taken as true, they do not demonstrate that he has a plausible right to relief, as Plaintiff failed to allege any facts demonstrating that Defendant intentionally interfered with the formation of a business relationship between Plaintiff, Smokey Garret, KWRI, Keller, and/or Teams, or that Defendant had actual knowledge of any prospective relationship or contract. Instead, Plaintiff's allegations show that Plaintiff had no way of knowing that Plaintiff was still negotiating his separation from KWRI and any effect on said negotiations were merely an incidental result of Defendant's allegations. Therefore, Plaintiff's claim against Defendant for tortious interference with prospective relations should be dismissed.

> iii. *Plaintiff has failed to plead that the alleged acts of interference by Defendant were independently tortious.*

39. To prove a claim for tortious interference with prospective business relations, Plaintiff must plead and prove "that the defendant's conduct was independently tortious or wrongful." *Santander Consumer USA, Inc. v. Zeigler Chrysler Dodge Jeep-Downers Grove, LLC*, 2017 WL 2729998, at *10 (N.D. Tex. 2017) (citing *In re Mem'l Hermann Hosp. Sys.*, 464 D.W.3d 686, 705 (Tex. 2015). "Independently tortious means that the conduct objected to would violate 'some other recognized tort duty,'" and "requires the plaintiffs to prove. . . that the defendant acted with malice." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001).

40. As discussed *supra*, Plaintiff's allegations against Defendant in this regard are entirely conclusory, both legally and factually. In a wholly conclusory fashion, Plaintiff alleges that Defendant made defamatory statements and did so with malice, but Plaintiff fails to plead facts sufficient to prove such conclusory statements. For such reasons, Plaintiff's cause of action for tortious interference with prospective relations should be dismissed.

> iv. *Plaintiff has failed to allege facts showing that his alleged injuries were proximately caused by an act or omission of Defendant.*

41. Furthermore, to prove an action for tortious interference with prospective business relations, the plaintiff must establish the defendant's interference proximately caused its injury. *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 53 (Tex. 2021).

42. Here, Plaintiff offers the conclusory statement that "[a]s a result of [Defendant's] wrongful conduct and tortious interference with the prospective purchase, [Plaintiff] has suffered significant damages, including a loss of tens of millions of dollars for the sale of [Plaintiff's] regions." *See* the Complaint, ¶ 90.

13

43. However, Plaintiff alleges that **Keller** rejected the sale of his regions, and **KWRI, Keller, and Teams** concealed Dow's false and malicious allegations from Plaintiff despite having a duty to disclose, and ultimately used said allegations to their advantage in rejecting the initial proposed sale and negotiating a more favorable sale of Davis's interests to Keller and insiders close to Keller.  *See* the Complaint, ¶¶ 88–89, 95.

44. Plaintiff also alleges that prior to Defendant's allegations, his personal and working with relationship with Keller and/or Teams had deteriorated, Plaintiff resigned in part to erode internal support for Keller's preferred business strategies, and Keller and/or Teams sought to make Plaintiff's separation from KWRI both as painful as possible for Davis and as beneficial as possible for himself.  *See* the Complaint, ¶¶ 25, 50–52.

45. Even if Plaintiff's allegations are taken as true, they do not demonstrate that he has a plausible right to relief, as Plaintiff failed to allege facts showing that any act and/or omission by Defendant proximately caused injury to him.  To the contrary, Plaintiff's allegations show that KWRI, Keller, and/or Teams had formulated their own alleged intent to cause injury to Plaintiff and took affirmative steps to that end before Defendant's allegations were made in the summer of 2020. *Id*.  Therefore, Plaintiff's claim against Defendant for tortious interference with prospective relations should be dismissed.

## IV.
## CONCLUSION

46. In summary, Plaintiff's claim for abuse of process should be dismissed as Defendant's alleged filing of a "frivolous" or "malicious" lawsuit is not an improper use of process under Texas law.  Similarly, Plaintiff's claim for tortious interference with prospective business relations should also be dismissed as the facts alleged in the Complaint fail to demonstrate that (a) the formation of a contract was reasonably probable; (b) Defendant intentionally interfered with

14

intentionally interfered with the formation of a business relationship between Plaintiff and Smokey Garret, KWRI, Keller, and/or Teams; (c) Defendant's alleged acts of interference were independently tortious; and (d) any act or omission by Defendant proximately caused injury to Plaintiff.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant prays the Court grant this Motion, in all things, and enter an Order dismissing all of Plaintiff's claims against Defendant, in their entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6). Additionally, Defendant prays the Court grant her such other and further relief, both general and special, at law and in equity, to which Defendant may show herself to be justly entitled.

Respectfully submitted,

/s/ *Ericha R. Brown*
Michael Y. Kim
State Bar No. 24039960
mkim@mkimlegal.com
Ericha Ramsey Brown
State Bar No. 24051952
erbrown@mkimlegal.com
Eduardo R. Garza
State Bar No. 24120843
egarza@mkimlegal.com

**THE MICHAEL KIM LAW FIRM, PLLC**
4236 W. Lovers Lane
Dallas, Texas 75209
(214) 357-7533
(214) 357-7531 Facsimile

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing instrument has been forwarded in accordance with the Federal Rules of Civil Procedure by electronic service and/or electronic mail on this 6th day of January 2023:

Andrew T. Miltenberg
amiltenberg@nmllplaw.com
Janine L. Peress
jperess@nmllplaw.com
NESENOFF & MILTENBERG LLP
363 Seventh Ave., 5th Floor
New York, NY 10001-3904

James Crewse
jcrewse@crewselawfirm.com
CREWSE LAW FIRM, PLLC
5546 Goodwin Ave
Dallas, Texas 75206

Kristin L. Bauer
Kristin.Bauer@jacksonlewis.com
Claire L. Cook
Claire.Cook@jacksonlewis.com
JACKSON LEWIS P.C.
500 N. Akard, Suite 2500
Dallas, Texas 75201

/s/ *Ericha R. Brown*
Ericha Ramsey Brown